IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**REGINALD EVERSON,**                  Case No. 4:17 CV 973

      Petitioner,                    Judge Solomon Oliver, Jr.

      v.                             Magistrate Judge James R. Knepp II

**WARDEN CHARMAINE BRACY,**

      Respondent.                REPORT AND RECOMMENDATION

## INTRODUCTION

*Pro se* Petitioner Reginald Everson ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Charmaine Bracy ("Respondent") filed an Answer/Return of Writ (Doc. 10), Petitioner filed a Reply/Traverse (Doc. 16), and Respondent filed a Sur-Reply (Doc. 17).[1] The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Doc. 3). For the reasons discussed below, the undersigned recommends the Petition (Doc. 1) be denied.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524,

---

1. Parties and courts commonly use the terms "Return of Writ" and "Traverse" to refer to what the Rules Governing Section 2254 Cases now term an "Answer" and "Reply". *See* Rule 5 of the Rules Governing Section 2254 Cases.

530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Seventh District Court of Appeals set forth the following facts on direct appeal:

{¶ 2} On March 30, 2008, Terrell Roland ("Terrell") was shot and killed outside his mother's home at 117 East Avondale in Youngstown, Mahoning County, Ohio. He was 18 years old. Terrell was sitting on the driveway next to his friend Mickele Glenn ("Glenn") when someone in a black vehicle drove by and shot him. Glenn ran inside the house and told the victim's mother, Carol Roland ("Carol"), about the shooting and she ran outside. Terrell told his mother that "Reg shot me," and he asked her to call 911. Terrell then lost consciousness and was unresponsive when police arrived. He died later that evening at the hospital.

{¶ 3} Youngstown Police Officers Kelly Lamb and Robert DiMaiolo were two of the officers who responded to the shooting. Officer Lamb determined that Glenn had witnessed the shooting and she placed him in Officer DiMaiolo's cruiser. Glenn initially stated that he had not seen the crime, but admitted he was a witness after being placed in the police cruiser. He identified the shooter as a man he knew named "Reg," and he gave a description of the car used in the shooting: a black, four-door Buick Regal. He did not know Reg's last name. Glenn told Officer DiMaiolo that Reg lived at 114 West Chalmers Avenue in Youngstown. Officer DiMaiolo took Glenn to the police station for further questioning and asked Officer Michael Quinn to investigate the 114 West Chalmers Avenue address. Officer Quinn went to the location and spoke with Marion Everson, Appellant's uncle, who stated that Appellant lived with him and had access to a black Buick Regal.

{¶ 4} It was later determined that Glenn and the victim were friends, and they both knew Appellant. On the afternoon of the shooting, Glenn was at 117 East Avondale to get his hair cut. He was wearing a bullet proof vest and was carrying a firearm because of a feud he was having with one of Appellant's cousins. He was standing outside the house in the driveway and Terrell was sitting next to him when a black Buick Regal drove up to the house and stopped. Shots were fired from the vehicle and hit Terrell. Glenn recognized the shooter as Reg and saw that there was no one else in the vehicle. He later picked Appellant out of a photo array as the person who shot Terrell.

{¶ 5} On April 10, 2008, Appellant was indicted in the Mahoning County Court of Common Pleas. He was charged with aggravated murder, R.C. 2903.01(A)(F), with an accompanying specification due to the fact that the crime took place by discharging a weapon from a motor vehicle (commonly known as the "drive-by" specification, R.C. 2941.146(A)). He was also charged with having a weapon while under disability, R.C. 2923.13(A)(2)(b), a third degree felony. On April 23, 2008, he was arraigned and pleaded not guilty. On April 7, 2009, Appellant filed a motion in limine to prevent Carol Roland from testifying about her son's statement that

2

"Reg shot me." That motion was denied July 8, 2009. On February 10, 2011 Appellant filed another motion in limine related to the victim's statement. That was also overruled on May 25, 2011.

{¶ 6} Appellant filed a motion to bifurcate count two, the weapons under disability charge, and the motion was granted on October 11, 2011. On June 12, 2012, Appellant filed, for a third time, a motion to suppress the victim's statement, which was denied on June 20, 2012. On June 14, 2012 Appellant filed a motion in limine to suppress all testimony other than that of Glenn, alleging that the state told the grand jury "[Glenn] was the only witness in this cause." Appellant claimed that judicial estoppel prohibited the state from calling any other witnesses. This motion was overruled on June 20, 2012.

{¶ 7} Mickele Glenn and Carol Roland testified at trial, as did a number of police officers who were involved with the case. Dr. Joseph Ohr, Mahoning County Deputy Coroner and Forensic Pathologist, testified at trial that the victim died from a gunshot wound to the abdomen.

{¶ 8} On June 28, 2012, Appellant was found guilty of aggravated murder as well as the firearm specification. On July 9, 2012, in a separate judgment entry following a bench trial, the court found Appellant guilty of possessing a weapon while under disability. On July 12, 2012, Appellant was sentenced to an aggregate term of 38 years to life in prison, including 30 years to life for aggravated murder, 5 years for the gun specification, and 3 years for having a weapon under a disability, all to be served consecutively. This timely appeal followed.

*State v. Everson*, 57 N.E.3d 289, 296–97 (Ohio Ct. App. 2016); (Ex. 31, Doc. 10-1, at 211-13)

("*Everson I*").

## PROCEDURAL HISTORY

State Court Conviction

A Mahoning County Grand Jury indicted Petitioner in April 2008 on one count of aggravated murder with a firearm specification (Count 1), and one count of having a weapon under disability (Count 2). (Ex. 1, Doc. 10-1, at 7-8). Petitioner pleaded not guilty upon arraignment. (Ex. 2, Doc. 10-1, at 9). In January 2009, Petitioner filed a motion to suppress any evidence of positive identifications of him. (Ex. 3, Doc. 10-1, at 15). The State filed a memorandum in

response. (Ex. 4, Doc. 10-1, at 21-23). The trial court did not issue a decision on this motion. *See* Ex. 31, Doc. 10-1, at 235.

In April 2009, Petitioner filed a motion *in limine* to exclude dying declaration testimony from the victim's mother. (Ex. 5, Doc. 10-1, at 27). The trial court denied Petitioner's motion, but ruled that the defense could bring in medical evidence to challenge the declaration during trial. (Ex. 6, Doc. 10-1, at 29). Later that month, Petitioner also filed a notice of alibi. (Ex. 7, Doc. 10-1, at 30).

In April 2010, the State filed a motion *in limine* to exclude "the admission of any evidence concerning the grand jury/no-bill of the witness's case." (Ex. 8, Doc. 10-1, at 33). Petitioner filed a memorandum in opposition (Ex. 9, Doc. 10-1, at 39-43), and in May 2011, the trial court overruled the State's motion (Ex. 10, Doc. 10-1, at 44).

In February 2011, Petitioner filed another motion *in limine* to prevent use of the dying declaration testimony (Ex. 11, Doc. 10-1, at 45), and the State responded in opposition (Ex. 12, Doc. 10-1, at 50). The trial court denied the motion and determined "the query by the victim's mother 'Who shot you?' and the decedent's response, 'Reggie did it' is admissible." (Exhibit 13, Doc. 10-1, at 56).

In March 2011, the State filed a motion *in limine* to exclude evidence "concerning the drugs found in victim's system at the time of his death." (Ex. 14, Doc. 10-1, at 57). The trial court sustained the State's motion. (Ex. 15, Doc. 10-1, at 64).

In June 2012, Petitioner filed a motion *in limine* to "bar testimony of any witness other than Mickele Glenn" (Ex. 17, Doc. 10-1, at 69), and the State opposed (Ex. 19. Doc. 10-1, at 91). Petitioner also filed a motion *in limine* "barring admission into evidence any dying declarations." (Ex. 21, Doc. 10-1, at 99-102). The trial court overruled both motions. (Ex. 20, Doc. 10-1, at 98).

Following a trial, a jury found Petitioner guilty of aggravated murder with a firearm specification (Count 1). (Ex. 22, Doc. 10-1, at 104). After he waived his right to a jury for Count 2, the trial court found Petitioner guilty of having a weapon under disability. (Ex. 23, Doc. 10-1, at 106). On July 13, 2012, Petitioner was sentenced to 30 years to life for aggravated murder with five consecutive years for the firearm specification (Count 1), and three consecutive years for having a weapon under disability (Count 2), resulting in an aggregate term of 38 years to life imprisonment. (Ex. 24, Doc. 10-1, at 107).

Direct Appeal

Petitioner, through counsel, filed a notice of appeal in July 2012 to the Ohio Seventh District Court of Appeals. (Ex. 25, Doc. 10-1, at 110). Simultaneously, through counsel, Petitioner filed a Motion to Appoint Substitute Counsel. (Ex. 26, Doc. 10-1, at 111). The Seventh District Court of Appeals granted the motion and appointed new counsel for Petitioner's direct appeal. (Ex. 27, Doc. 10-1, at 112).

Petitioner raised twelve assignments of error on direct appeal:

1. The trial court committed reversible error by allowing into evidence the out of court statement of the victim "Reg shot me" in violation of the Confrontation Clause set forth in the Sixth Amendment to the Constitution of the United States of America.

2. Defendant/Appellant was denied his constitutional right to confront and cross-examine the witnesses against him when the court permitted inadmissible hearsay testimony and where such testimony was not harmless beyond a reasonable doubt.

3. The trial court committed reversible error by excluding relevant and proper cross examination evidence.

4. The trial court committed reversible error by admitting the 911 recordings under the excited utterance exception to the hearsay exclusion rule.

5. The trial court committed reversible error when it permitted the introduction into evidence of the autopsy report and/or the testimony of Dr. Oher as the same

was in violation of the Defendant/Appellant's rights under the Confrontation Clause that is set forth in the Sixth Amendment to the United States Constitution.

6. Defendant/Appellant was denied due process of law and equal protection under the law when the trial court failed to render a decision with regard to the Defendant/Appellant's motion to suppress eyewitness identification testimony, said motion to suppress being based upon the Defendant/Appellant's Fifth Amendment right to due process and Sixth Amendment right to counsel under the United States Constitution made applicable to the states by the Fourteenth Amendment to the United States Constitution.

7. The trial court committed reversible error when it allowed the testimony of Mickele Glenn in violation of the doctrine of judicial estoppel.

8. The trial court committed reversible error by failing to instruct the jury that [their] verdict must be unanimous.

9. The Defendant/Appellant's conviction for having weapons under disability, Count 2 of the indictment, must be reversed because the trial court lacked jurisdiction to conduct a bench trial on that count absent strict compliance with the statute mandating that the wavier of jury must be in writing, signed by the Defendant, filed in the criminal action and made part of the record.

10. Defendant/Appellant's conviction in Count Two is based upon legally insufficient evidence and therefore a denial of due process.

11. The Defendant/Appellant's conviction is against the manifest weight of the evidence.

12. Defendant/Appellant was denied his constitutional right to a fair trial due to the cumulative errors in these proceedings.

(Ex. 28, Doc. 10-1, at 128-51) (capitalization altered). The State filed an answer. (Ex. 29, Doc. 10-1, at 153-205). In November 2014, Petitioner's appellate counsel moved to withdraw from representation. (Ex. 30, Doc. 10-1, at 206). The Seventh District Court of Appeals granted the motion and appointed new appellate counsel. *Id*. at 208.

On January 9, 2016, the Seventh District Court of Appeals sustained Petitioners ninth assignment of error, vacating Petitioner's conviction for having a weapon under disability and remanding the charge to the trial court for further proceedings. *Everson I*, 57 N.E.3d at 312; (Ex.

6

31, Doc. 10-1, at 240-42).[2] Additionally, the court determined Petitioner's tenth assignment of error was moot (Ex. 31, Doc. 10-1, at 243), and overruled the remaining assignments of error, *id.* at 210-45.

Petitioner's trial attorney filed a motion to be appointed counsel for Petitioner's direct appeal to the Ohio Supreme Court (Ex. 32, Doc. 10-1, at 247), which the Seventh District Court of Appeals granted. (Ex. 33, Doc. 10-1, at 248).

Delayed Appeal to the Ohio Supreme Court

On April 18, 2016, Petitioner filed an untimely *pro se* notice of appeal, (Ex. 36, Doc. 10-1, at 252-54), and motion for leave to file a delayed appeal (Ex. 37, Doc. 10-1, at 255-63), to the Ohio Supreme Court. On May 4, 2016, the Ohio Supreme Court denied Petitioner's motion. (Ex. 38, Doc. 10-1, at 264).

Post-Conviction Proceedings

On July 12, 2013, while his direct appeal was pending, Petitioner filed a *pro se* petition to vacate or set aside judgment of conviction or sentence. (Ex. 39, Doc. 10-1, at 265-76). In his memorandum in support, Petitioner alleged that he was denied the effective assistance of trial counsel when his attorney: (1) failed to subpoena "several witnesses to testify at trial"; (2) failed to "put on a case" or present witnesses to corroborate his alibi; and (3) denied him the right to testify at trial. *Id.* at 266. The State filed a motion for judgment on the pleadings. (Ex. 40, Doc. 10-1, at 277-96). On September 25, 2013, the trial court upheld Petitioner's conviction and sentence noting Petitioner "failed to demonstrate in his pleadings and affidavit that his trial counsel was

2. On January 28, 2016, the State filed a motion for leave to dismiss Count Two (having a weapon under disability) of the indictment without prejudice. (Ex. 34, Doc. 10-1, at 249-50). The trial court sustained the State's motion on February 1, 2016. (Ex. 35, Doc. 10-1, at 251).

constitutionally ineffective" (Ex. 41, Doc. 10-1, at 297). The trial court also summarily overruled Petitioner's motions for counsel and expert assistance. *Id.*

On December 23, 2013, Petitioner filed an untimely, *pro se*, notice of appeal (Ex. 42, Doc. 10-1, at 298), and a motion for leave to file a delayed appeal (Ex. 43, Doc. 10-1, at 300-15), to the Seventh District Court of Appeals. The Seventh District Court of Appeals allowed Petitioner's appeal to continue because Petitioner was never provided direct notice of a final judgment by the clerk of courts. (Ex. 44, Doc. 10-1, at 316).

In February 2014, Petitioner filed a motion to dismiss his appeal for lack of a final appealable order, noting the final judgment did not set forth any findings of fact or conclusions of law. (Ex. 45, Doc. 10-1, at 317). On April 22, 2014, the Seventh District Court of Appeals issued a limited remand "for thirty (30) days to allow the trial court to state with specificity the findings it made and the conclusions of law," and held the appeal in abeyance. (Ex. 46, Doc. 10-1, at 319-20).

While his motion to dismiss his appeal was pending, on March 6, 2014, Petitioner filed a motion for leave to amend his post-conviction petition. (Ex. 47, Doc. 10-1, at 321-22). The trial court denied the motion as meritless. (Ex. 48, Doc. 10-1, at 329). On May 9, 2014, Petitioner filed a second (identical) motion for leave to amend his petition for post-conviction relief (Ex. 49, Doc. 10-1, at 330-31), to which the State filed opposition (Ex. 50, Doc. 10-1, at 340-42), and proposed findings of fact and conclusions of law (Ex. 51, Doc. 10-1, at 343-45). On May 22, 2014, the trial court granted the State's motion to dismiss Petitioner's petition to vacate or set aside judgment or conviction, and again dismissed Petitioner's July 12, 2013 post-conviction relief petition. (Ex. 52, Doc. 10-1, at 350-53). Additionally, the trial court denied Petitioner's May 9, 2014 motion to amend the petition for post-conviction relief for lack of jurisdiction. (Ex. 53, Doc. 10-1, at 354).

8

On June 23, 2014, Petitioner, *pro se*, filed a timely notice of appeal to the Seventh District Court of Appeals. (Ex. 54, Doc. 10-1, at 355). In August, Petitioner filed a motion to correct the record asking the court to consolidate the cases, or assign them separate case numbers. (Ex. 58, Doc. 10-1, at 404-05). In September, the Seventh District Court of Appeals merged this appeal with Petitioner's February 2014 appeal which was being held in abeyance pending the limited 30-day remand. *See* Ex. 55, Doc. 10-1, at 356; *see also* Ex. 46, Doc. 10-1, at 319-20. The Seventh District Court of Appeals also overruled Petitioner's motion to dismiss the appeal for lack of a final appealable order. (Ex. 56, Doc. 10-1, at 357). In August 2014, Petitioner filed a *pro se* brief in support where he raised four assignments of error:

1. Trial Court abused its discretion when it denied Appellant's post-conviction petition on the merits, violating Appellant's due process rights.

    A.    Appellant was denied the effective assistance of counsel

        1.    Trial counsel failed to subpoena material witness(es) at trial.

        2.    Trial counsel failed to "put on a case" to corroborate Appellant's alibi.

        3.    Trial counsel denied Appellant his right to testify at trial.

2. The State committed prosecutorial misconduct and affirmatively misled the judge by providing proposed findings of fact and conclusions of law that the prosecutor knew or should have known to be false due to the commission of a *Brady* violation, violating Appellant's due process rights.

3. Trial Court erred when he adopted the improper findings of fact and conclusions of law submitted by the State without proper review of the record, violating the Appellant's due process rights.

4. Trial Court erred when it did not address the Defendant's Motion for leave to Amend Petition for Post-Conviction Relief filed while final judgment for the petition was pending. Trial court committed reversible error in granting summary judgment for the State of Ohio based on the erroneous fact that Petitioner failed to attach affidavits in support of his petition when an unsolicited, material affidavit was filed, but ignored, violating Appellant's due process rights.

(Ex. 57, Doc. 10-1, at 359). The State responded in opposition (Ex. 59, Doc. 10-1, at 406-34), and Petitioner replied (Ex. 60, Doc. 10-1, at 435-41). On June 10, 2016, the Seventh District Court of Appeals sustained Petitioner's fourth assignment of error, reversed and remanded the trial court's decision denying his petition for post-conviction relief, and ordered the trial court to consider his two amended post-conviction petitions. *State v. Everson*, 2016 WL 3258314 (Ohio Ct. App.); (Ex. 61, Doc. 10-1, at 442-52) ("*Everson II*"). His three remaining assignments of error were rendered moot, and not considered. *Id*. at 452.

Trial Court Remand and Subsequent Appeal

On remand, the State filed a motion for summary judgment, asserting that the petition was unsupported by evidence. (Ex. 62, Doc. 10-1, at 455). On July 14, 2016, the trial court granted the State's motion and dismissed the petition for post-conviction relief. (Ex. 63, Doc. 10-1, at 493).

On August 5, 2016, Petitioner, *pro se*, filed a timely notice of appeal to the Seventh District Court of Appeals. (Ex. 64, Doc. 10-1, at 497). The Seventh District Court of Appeals denied Petitioner's request for appointed counsel. (Ex. 65, Doc. 10-1, at 499). On appeal, Petitioner raised four assignments of error:

1. The trial court abused its discretion when it granted the    State's    Motion    for Summary Judgment and dismissed Defendant's Petition for Post Conviction Relief on remand from this honorable Court, thereby violating Defendant's due process rights under the V and XIV Amendments of the United States Constitution.

2. The trial court abused its discretion when it failed to hold a hearing   pursuant   to ORC 2953.21(C) to review Defendant's substantive assignments of error in violation of the V and XIV Amendments of the United States Constitution.

3. Appellant was denied effective assistance of trial counsel in violation of the VI Amendment of the United States Constitution when counsel: (1) failed to subpoena material witness(es); (2) failed to construct  an  alibi  defense;  and  (3)  denied Appellant's right to testify at trial in his own defense.

10

4.  The State committed prosecutorial misconduct and affirmatively misled the judge by providing false findings of fact and conclusions of law that the prosecutor knew or should have known to be false due to the commission of a *Brady* violation, violating Appellant's due process rights.

(Ex. 66, Doc. 10-1, at 500-26). The State responded in opposition. (Ex. 67, Doc. 10-1, at 527-55), and Petitioner replied (Ex. 68, Doc. 10-1, at 556-60). On March 7, 2017, the Seventh District Court of Appeals affirmed the judgment of the trial court. *State v. Everson*, 2017 WL 986141 (Ohio Ct. App.); (Ex. 69, Doc. 10-1, at 561-71) ("*Everson III*").

On March 24, 2017, Petitioner filed an untimely application for reconsideration. (Ex. 70, Doc. 10-1, at 573-81). Petitioner filed a second application for reconsideration on April 10, 2017. (Ex. 71, Doc. 10-1, at 582-88). The State filed a response in opposition. (Ex. 72, Doc. 10-1, at 589-94). On April 26, 2017, the Seventh District Court of Appeals denied Petitioner's March 24, 2017 application for reconsideration, finding it was untimely and lacked merit. (Ex. 73, Doc. 10-1, at 595-97). On May 5, 2017, the Seventh District Court of Appeals denied Petitioner's April 10, 2017 application for reconsideration for the same reasons. (Ex. 74, Doc. 10-1, at 598-99).

On April 18, 2017, Petitioner, *pro se*, filed a timely notice of appeal to the Ohio Supreme Court. (Ex. 75, Doc. 10-1, at 600). In his memorandum in support, Petitioner raised five propositions of law:

1.  The Seventh District Court of Appeals erred in applying res judicata to Everson's claim of ineffective assistance of trial counsel based on evidence de hors the record, thereby violating Everson's Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution.

2.  The trial court abused its discretion when it granted the State's Motion for Summary Judgment and dismissed Everson's Petition for Postconviction Relief on remand from the Seventh District Court of Appeals, thereby violating Everson's Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution.

3.  The trial court abused its discretion when it failed to hold a hearing  pursuant  to R.C. 2953.21(C) to review Everson's substantive assignments of error in violation

of Everson's Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution.

4. Everson was denied effective assistance of trial counsel in violation of the Sixth Amendment to the U.S. Constitution when counsel: (1) failed to subpoena material witnesses; (2) failed to construct and alibi defense; and (3) denied Everson's right to testify at trial in his own defense.

5. Everson was denied a fair trial, in violation of his Due Process protections under the Fifth and Fourteenth Amendments, due to prosecutorial misconduct.

(Ex. 76, Doc. 10-1, at 602-31). The State did not respond, and on September 13, 2017, the Ohio Supreme Court declined to accept jurisdiction. *State v. Everson*, 81 N.E.3d 1712 (Ohio 2017) (table); (Ex. 77, Doc. 10-1, at 632) ("*Everson IV*").

Ohio App. R. 26(B) Application to Reopen Direct Appeal

On April 4, 2016, Petitioner, *pro se*, filed an Ohio Appellate Rule 26(B) application to reopen his direct appeal based on an allegation of ineffective assistance of appellate counsel. (Ex. 78, Doc. 10-1, at 633). He incorrectly filed the application under his (then pending) post-conviction appeal. *Id*. In his application, Petitioner alleged his appellate counsel was ineffective for: (1) failing to file transcripts; (2) failing to properly argue the "dying declaration"; (3) failing to properly argue the inclusion of the autopsy report; and (4) failing to raise the issue of ineffective trial counsel. *Id*. at 635-47. The State responded in opposition. (Ex. 79, Doc. 10-1, at 648-56). On May 9, 2016, the Seventh District Court of Appeals overruled the application to reopen Petitioner's pending post-conviction appeal because there was no final judgment. (Ex. 80, Doc. 10-1, at 657-59). Further, the appellate court interpreted Petitioner's misfiling as though it was filed in the correct case (his direct appeal), and overruled it because "none of Appellant's arguments indicate deficient performance of counsel or resulting prejudice". *Id*.

On June 20, 2016, Petitioner, *pro se*, filed a timely notice of appeal to the Ohio Supreme Court, (Ex. 81, Doc. 10-1, at 660-62), raising a single proposition of law:

1. Appellant Reginald Everson was denied effective assistance of appellate counsel when counsel failed to raise trial counsel's ineffectiveness based upon each of the following grounds of trial counsel's deficient performance:

    1. Failure to file the transcripts for the suppression hearings;
    2. Failure to properly argue against the admission of the dying declaration;
    3. Failure to properly argue the trial court's inclusion of the autopsy report.

(Ex. 82, Doc. 10-1, at 663-76) (capitalization altered). The State waived response. (Ex. 83, Doc. 10-1, at 680). On August 31, 2016, the Ohio Supreme Court declined to accept jurisdiction. *State v. Everson*, 57 N.E.3d 1171 (Ohio 2016) (table); (Ex. 84, Doc. 10-1, at 681) ("*Everson V*").

### FEDERAL HABEAS CORPUS

On May 2, 2017, Petitioner timely filed the instant habeas petition. (Doc. 1).[3] In it, Petitioner raises sixteen grounds for relief:

**GROUND ONE**: The trial court committed reversible error when it allowed evidence of an out of court statement of the victim in violation of the Confrontation Clause set forth in the Sixth Amendment to the U.S. Constitution.

**Supporting Facts:** The trial court allowed the out of court statement of the victim that "Reg shot me." The statement was not determined to be a dying declaration. The court improperly allowed the statement implicating Petitioner as the person who shot the victim, when the victim was under the influence of drugs and the statement was hearsay.

**GROUND TWO:** Petitioner was denied his constitutional right to confront and cross-examine the witness against him when the court permitted impermissible hearsay testimony and where such testimony was not harmless beyond a reasonable doubt.

**Supporting Facts:** Trial court improperly admitted the false out of court statement of Petitioner's uncle that Petitioner had access to a car similar to the one used in the crimes involved in this case. The evidence was false and prejudicial and improperly admitted, depriving Petitioner of a fair trial.

---

3. Pursuant to the prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). *See* Doc. 1, at 25 (representing that Petition was placed in the prison mailing system on May 2, 2017).

**GROUND THREE:** The trial court committed reversible error by excluding relevant and proper cross-examination evidence.

**Supporting Facts:** The trial court granted the State's motion in limine to prevent autopsy evidence that there were drugs in the victim's system at the time of the shooting. This violated the Petitioner's right to confront his accusers. The jury is entitled to all information that might bear on the accuracy and the truth of a witness's testimony. As the victim's "dying declaration" was [used] to convict the Petitioner, the accuracy of that statement and credibility of the statement would be affected by the intoxication of the declarant.

**GROUND FOUR:** The trial court committed reversible error by admitting 911 recordings under the excited utterances exception[] to the hearsay exclusion rule which prevented Petitioner from receiving a fair trial.

**Supporting Facts:** Petitioner was denied the right to confront the witnesses against him when the 911 testimonial recordings of witnesses that were recorded on the day the crimes were committed; but the witnesses were never called to testify at trial. The State did not mention in its motion in limine that the statements were non-testimonial. Petitioner was prevented from receiving a fair trial by playing the highly emotionally charged recordings to prey upon the passions of the jurors. No evidence was present in the recordings to implicate Petitioner in the crimes.

**GROUND FIVE:** The introduction into evidence of the findings of the autopsy report by the testimony of the State's expert medical witness violated Petitioner's rights under the Confrontation Clause as set forth in the Sixth Amendment to the U.S. Constitution.

**Supporting Facts:** The State's expert medical witness was allowed to testify on evidence from the autopsy report when he was not the one who performed the autopsy nor any tests that were part of the autopsy. Petitioner was prevented from confronting the actual person who generated the examination and test findings.

**GROUND SIX:** Petitioner was denied Due Process and Equal Protection under the law when the trial court failed to render a decision with regard to the Petitioner's Motion[] to Suppress Eyewitness testimony, said motion to suppress being based on Petitioner's Fifth Amendment right to Due Process and Sixth Amendment right to counsel under the U.S. Constitution made applicable to the States under the Fourteenth Amendment to the U.S. Constitution.

**Supporting Facts:** No decision based on the Motion to Suppress, written or otherwise, resolving the issues of making essential factual findings can be found on the record of this case. The trial court never decided or ruled on the Motion to Petitioner's prejudice, depriving him of a fair trial as the trial court failed to make any determinations on critical issues that were of constitutional magnitude properly raised by the Petitioner.

**GROUND SEVEN:** The testimony of Mickele Glenn was in violation of the doctrine of estoppel violating Petitioner's right to a fair trial and his right to Due Process.

**Supporting Facts:** The record is clear that during the grand jury proceedings regarding the grand jury presentation of the weapons case against Mickele Glenn for the weapon he possessed on the day of the shooting that the assistant prosecutor presented the case to the grand jury and asked them to "no bill" the case because Glenn was the only witness in the Petitioner's murder case. The State then brought additional witnesses at trial.

**GROUND EIGHT:** Petitioner was denied his presumption of innocence in violation of his right to due process when the trial court failed to instruct the jury that their verdict had to be unanimous.

**Supporting Facts:** The trial court erred when it failed to properly instruct the jury that the verdict of the jury had to be unanimous. Thus the State was relieved from their burden of persuasion and the Petitioner was denied his presumption of innocence.

**GROUND NINE:** Petitioner was denied his right to due process when his convictions were against the manifest weight and without sufficiency of the evidence.

**Supporting Facts:** Petitioner's convictions were not supported by the manifest weight of the evidence and the evidence was insufficient to support and maintain his convictions.

**GROUND TEN:** Petitioner was denied the effective assistance of counsel when his trial counsel failed to subpoena material witnesses, failed to construct an alibi defense when the evidence was available, and denied Petitioner his right to testify at his trial. The appellate court erred in applying res judicata to [P]etitioner's claim of ineffective assistance of counsel based on evidence de hors the record, thereby violating his right to Due Process under the Fifth and Fourteenth Amendments to the U.S. Constitution.

**Supporting Facts:** Defense counsel was aware of several witnesses that could provide alibi evidence, show that the police made false statements at trial, and provide exculpatory evidence negating Petitioner's guilt of the crimes for which he was convicted. Trial counsel never informed Petitioner of his right to testify on his own behalf. Petitioner raised an issue of ineffective assistance of counsel in an Application for Reopening under App.R. 26(B). The appellate court stated it was related to evidence de hors the record and should not be addressed on direct appeal. When Petitioner raised the issue in a timely postconviction petition, the same court, the Seventh District Court of Appeals (after denial by the trial court), then ruled

15

that the issue was barred by res judicata as it should have been raised on direct appeal. The court cannot deny the issue on both grounds, as they would deny Petitioner any effective means of presenting the issue for correction in any court.

**GROUND ELEVEN:** Petitioner was denied Due process of law when his postconviction petition was denied without a hearing following the remand by the state appellate court.

**Supporting Facts:** The Seventh District Court of Appeals found that Petitioner was denied Due Process when the trial court improperly denied Petitioner's postconviction petition without proper review of evidence. Upon remand, Petitioner's postconviction petition was again denied without a proper hearing on the evidentiary issues, denying Petitioner his right to Due Process.

**GROUND TWELVE:** Petitioner was denied a fair trial in violation of Due Process protections due to egregious prosecutorial misconduct.

**Supporting Facts:** The prosecuting attorney for the State of Ohio, Martin Desmond, who has now been fired from his position, met with a witness in the case, threatened him so that he would lie on the stand, and when the witness refused and made exculpatory statements to Mr. Desmond, he was sent back to prison. Mr. Desmond did not relate the exculpatory statements to the defense, and precluded their presentation to the jury, which prejudiced Petitioner and deprived him of a fair trial.

**GROUND THIRTEEN:** Petitioner was denied the effective assistance of appellate counsel when counsel failed to ensure the filing of the record with the reviewing court, leading to the dismissal of Petitioner's related issues on appeal without merit review.

**Supporting Facts:** Appellate counsel was ineffective as he was aware that the record for an appeal must be filed with the reviewing court in order for the court to address the issues being appealed. Counsel failed to provide the reviewing court with the appropriate record for Petitioner's appeal, leaving the appellate court no option other than to deny Petitioner's issues. This inaction prevented Petitioner from a fair review and adjudication of the issues in the appellate court, demonstrating a clear failure to meet the constitutional standard and prejudicing Petitioner by the resultant denial of his issues without review.

**GROUND FOURTEEN:** Appellate counsel was ineffective for failing to argue against a victim's dying declaration in a proper manner, depriving Petitioner of a fair trial.

**Supporting Facts:** During trial, the court allowed the introduction of the victim's alleged statement over counsel's objection. The statement was delivered to the jury by the victim's mother. Counsel did not argue against the declaration being

considered an "excited utterance" under the exclusion to the rule. The statement that was alleged to have been made by the victim was pivotal to the Petitioner's case, as the victim's mother claimed the statement implicated Petitioner in her son's death. The alleged statement was not an "excited utterance" and should not have been permitted to be stated to the jury. Failure to argue this issue prevented the Petitioner from receiving a fair trial.

**GROUND FIFTEEN:** Appellate counsel was ineffective when he failed to properly argue in favor of the admission of the autopsy findings of the victim.

**Supporting Facts:** The autopsy report was not admitted into the trial. Trial counsel attempted to proffer the report as evidence to support Petitioner's claim of not guilty. The autopsy report was critical to the defense, as it showed the victim was intoxicated at the time of an alleged "dying declaration." The victim was known to have been taking a drug that had both opioid and non-opioid activity in addition to marijuana at the time of his death, making his "dying declaration" not credible.

**GROUND SIXTEEN:** Appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel when counsel failed to call witnesses whose testimony could exculpate Petitioner and refute the false testimony of a police officer. Petitioner was also deprived of his right to confront a witness whose hearsay was falsely represented to the jury.

**Supporting Facts:** Trial counsel failed to call Petitioner's uncle as a witness at trial. The police related a statement that was alleged to have been made by Petitioner's uncle that Petitioner had access to a vehicle similar to the one used in the commission of the crime, which was incorrect. Another witness, Valentin, was on the witness list for the prosecution. Petitioner's counsel never investigated the potential testimony of Valentin prior to trial. He was never called as a witness. Following trial, Petitioner obtained an affidavit from Valentin which exculpated him from the crime in the instant case. Counsel's failures were clearly below the constitutional requirement of due process and a fair trial.

(Doc. 1, at 16-22).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### DISCUSSION

The undersigned addresses Petitioner's grounds for relief in groups where they may be resolved in a similar manner. For the reasons discussed below, the undersigned finds Grounds One through Ten are procedurally defaulted; Ground Eleven is non-cognizable; and Grounds Twelve

through Sixteen fail on the merits. As such, the undersigned recommends the Petition (Doc. 1), be denied.

<u>Non-Cognizable Claim</u>

*Ground Eleven*

In Ground Eleven, Petitioner asserts he was "denied Due Process when his postconviction petition was denied without a hearing[.]" (Doc. 1, at 16). Respondent asserts, and the undersigned agrees, this claim does not raise a cognizable ground for habeas relief. (Doc. 10, at 76).

"[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002)). This is "because 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *Id.* at 853 (quoting *Kirby*, 794 F.2d at 246). Because a writ of habeas corpus is not the proper channel to challenge "collateral matters" such as here – a trial court's denial of an evidentiary hearing before it considered a post-conviction petition – the undersigned recommends Ground Eleven be denied.

<u>Procedurally Defaulted Grounds</u>

*Grounds One through Five, Seven, Eight, and Nine*

Respondent contends that Grounds One through Five, Seven, Eight, and Nine are all procedurally defaulted. (Doc. 10, at 33, 58-59, 62-63). Petitioner "does not disagree with Respondent's version of his direct appeal and the [e]vents that followed" but asserts he can show cause to overcome the default. (Doc. 16, at 6, 13-14). For the reasons discussed below, the

undersigned recommends the Court find Grounds One through Five, Seven, Eight, and Nine procedurally defaulted.

To seek a writ of habeas corpus in federal court, a petitioner must first satisfy the requirements of 28 U.S.C. § 2254(b)(1)(A), which states: "[a]n application for a writ of habeas corpus ... shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State". Exhaustion requires a petitioner to "fairly present" federal claims "to the state courts, including the state court of appeals and the state supreme court." *Bray v. Andrews*, 640 F.3d 731, 734–35 (6th Cir. 2011) (citing *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009)); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This is to "alert[] [the state court] to the fact that the prisoner[ ] [is] asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (internal quotation marks omitted) (citations omitted). To accomplish this, a petitioner must fairly present the substance of his federal constitutional claims to the state courts before habeas relief. *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Hence, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). If a petitioner has failed to exhaust his state remedies and is barred from raising his claim by state law, his habeas claim is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848; *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009).

A petitioner may also procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Williams*, 460 F.3d at 806. If a petitioner fails to comply with a procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding

20

relief, the claim is procedurally defaulted. *Id.*; *see Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

To overcome procedural default, a petitioner must demonstrate both cause for the default and prejudice from the error. *Sutton v. Carpenter*, 745 F.3d 787, 790–91 (6th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991)). "Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

Here, Petitioner raised Grounds One through Five, Seven, Eight, and Nine on direct appeal to the Seventh Circuit Court of Appeals. *See* Ex. 28, Doc. 10-1, at 128-51. On January 9, 2016, the Seventh District Court of Appeals overruled these assignments of error. *Everson I*, 57 N.E.3d at 312; (Ex. 31, Doc. 10-1, at 210-45). Pursuant to the Ohio Supreme Court's rules, he had 45 days (until February 15, 2016) to seek review of that decision. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i). It was not until April 2016 that Petitioner filed an *untimely* notice of appeal to the Ohio Supreme Court (Ex. 36, Doc. 10-1, at 252-54), and a motion for leave to file a delayed appeal (Ex. 37, Doc. 10-1, at 255-63). In May 2016, the Ohio Supreme Court denied Petitioner's motion for leave to file a delayed appeal. (Ex. 38, Doc. 10-1, at 264). Because Petitioner did not present these claims to Ohio's highest court, he did not properly exhaust them. 28 U.S.C. § 2254(b)(1)(A). These grounds are procedurally defaulted because Petitioner failed "to comply with state procedural rules in presenting his claim to the appropriate state court." *Williams*, 460 F.3d at 806. It is well established that the denial of a motion for leave to file a delayed appeal to the Ohio Supreme Court – the default at issue here – constitutes an adequate and independent state procedural ground on which to bar habeas review. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 432 (6th Cir.

2006); *Bonilla v. Hurley*, 370 F. 3d 494, 497 (6th Cir. 2004). Thus, the Court may only consider these claims if Petitioner can show cause and prejudice to overcome the default.

As cause to overcome the procedural default, Petitioner asserts that he was prevented from timely appealing these grounds to the Ohio Supreme Court. (Doc. 16, at 13). Specifically, Petitioner notes that he was preparing to file his memorandum in support of jurisdiction to the Ohio Supreme Court *pro se*, but learned that an attorney filed a motion to appoint counsel to the Ohio Supreme Court on his behalf. *See* Ex. 32, Doc. 10-1, at 247. Petitioner contends he reasonably believed the motion would be approved (and it ultimately was) so he did not take any further action. (Doc. 16, at 13). For reasons unknown to the Court, Petitioner's appointed counsel never filed a notice of appeal to the Ohio Supreme Court. Petitioner argues he was left with no choice but to file a delayed appeal *pro se* – which the Ohio Supreme Court ultimately denied. *Id.*; Ex. 37, Doc, 10-1, at 255-63. Thus, Petitioner asserts ineffective assistance of appellate counsel as cause to overcome this procedural default.

Respondent argues, and the undersigned agrees, that Petitioner may not rely on ineffective assistance of counsel as cause to cure a procedural default here because he did not have a Sixth Amendment right to counsel on appeal to the Ohio Supreme Court. *See Stone v. State*, 2017 WL 3594953, at *2 (6th Cir.) ("Because Stone had no right to counsel to pursue an appeal to the Ohio Supreme Court, he was not deprived of constitutionally effective counsel. . . ineffective assistance of counsel cannot serve as cause to excuse Stone's failure to exhaust in the Ohio Supreme Court when he was not entitled to counsel at that stage.") (internal citations omitted); *see also Smith v. Warden, Marion Corr. Inst.*, 2018 WL 7345870, at *3 (6th Cir.) ("Smith was not entitled to the assistance of counsel in filing a discretionary appeal with the Ohio Supreme Court."). Because Petitioner was not entitled to counsel before the Ohio Supreme Court under the Sixth Amendment,

alleged ineffective assistance of said counsel cannot serve as cause to overcome the procedural default here. As Petitioner has not shown cause, there is no need for the undersigned to reach a prejudice analysis and no need to examine the merits of these grounds.

Finally, to excuse the default, Petitioner alleges actual innocence. (Doc. 16, at 15-16, 77-78). A procedural default may be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Supreme Court has held such an inquiry requires a petitioner "supplement[ ] a constitutional claim with a 'colorable showing of factual innocence.' " *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 454 (1986)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *Id.* (quoting *Stone v. Powell,* 428 U.S. 465, 492-93 (1976)). However, the Court has counseled the actual innocence exception "should remain rare and only be applied in the extraordinary case." *Souter v. Jones*, 395 F.3d 577, 590 (2005) (internal quotations and citations omitted).

Here, Petitioner relies on the affidavit of Carlos Valentin to support his actual innocence claim. (Doc. 16, at 77-78). Petitioner asserts the testimony of Carlos Valentin is exculpatory, and therefore, should have been introduced at trial. *Id*. The problem with Petitioner's argument, however, is that Carlos Valentin's affidavit was known to defense counsel *at the time of the trial*. *See* Ex. 47, Doc. 10-1, at 328 ("I talked to Reginald Everson's Attorney Paul Conn and told him

23

that I would come to court to testify as to everything I witnessed on March 30, 2008 with regards to the shooting[.]"). And, as noted above, the evidence a petitioner relies on to support an actual innocence claim must be "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. For reasons unknown to the Court, Petitioner's trial counsel decided against calling Carlos Valentin as a witness. And because Petitioner's evidence here was known to his trial counsel, he is unable to rely on it now as "new and reliable", and thus fails to meet the actual innocence standard.

For these reasons, the undersigned recommends the Court find Grounds One through Five, Seven, Eight, and Nine procedurally defaulted.

*Ground Six*

In Ground Six, Petitioner alleges he was "denied Due Process and Equal Protection under the law when the trial court failed to render a decision with regard to the Petitioner's Motion[] to Suppress Eyewitness testimony[.]" (Doc. 1, at 11). Respondent contends this ground is procedurally defaulted, and Petitioner has not shown cause or prejudice to excuse the default. (Doc. 10, at 53-54).

Petitioner raised the issue in Ground Six on direct appeal. *See* Ex. 28, Doc. 10-1, at 142-43. The Seventh District Court of Appeals overruled this assignment of error, in part, because his appellate counsel failed to file the necessary transcripts with the court. *Everson I*, 57 N.E.3d at 308; (Ex. 31, Doc. 10-1, at 235-36). Similarly, Petitioner included the allegations in Ground Six in his *untimely* appeal to the Ohio Supreme Court. *See* Ex. 37, Doc. 10-1, at 255-63. The Ohio Supreme Court denied Petitioner's motion for leave to file a delayed appeal under Ohio Supreme Court Practice Rule 7.01(A)(4)(a). (Ex. 38, Doc. 10-1, at 264). And, as noted above, because

24

Petitioner did not present this claim to Ohio's highest court, he did not properly exhaust it and the claim is therefore procedurally defaulted. 28 U.S.C. § 2254(b)(1)(A).

As cause to overcome this procedural default, Petitioner asserts that his appellate counsel was ineffective for failing to file the transcripts necessary for the Seventh District Court of Appeals to review the claim. (Doc. 16, at 91). Petitioner includes an ineffective assistance of appellate counsel claim on the transcript issue at Ground Thirteen of his Petition. *See id*. For the reasons thoroughly discussed below under Ground Thirteen, Petitioner has failed to demonstrate the appellate court's finding that appellate counsel was not ineffective under *Strickland*, was contrary to, or an unreasonable application of, federal law. 28 U.S.C. § 2254(d); *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Accordingly, Petitioner has not shown cause and prejudice such to overcome his procedural default of Ground Six. And, for the reasons stated above, his actual innocence argument – where he relies on the affidavit of Carlos Valentin – also fails. (Doc. 16, at 77-78). Thus, the undersigned recommends Ground Six be denied.

*Grounds Ten*

In Ground Ten, Petitioner asserts he was denied effective assistance of trial counsel when his trial counsel "failed to subpoena material witnesses, failed to construct an alibi defense when the evidence was available, and denied Petitioner his right to testify at his trial." (Doc. 1, at 15). Petitioner did not raise this issue on direct appeal, but later raised it in his post-conviction petition. (Ex. 57, Doc. 10-1, at 359). The trial court dismissed the post-conviction petition. (Ex. 63, Doc. 10-1, at 493). On appeal, the Seventh District Court of Appeals found:

> {¶ 35} In this assignment of error, appellant asserts his trial counsel was ineffective for (1) failing to subpoena material witnesses to testify in response to police officers' testimony, (2) failing to put on a case to corroborate his alibi, and (3) denying him his right to testify on his own behalf at trial.

{¶ 36} The doctrine of res judicata provides that any issue that could have been raised on direct appeal, and was not, is barred in later proceedings and not subject to review. *State v. Saxon*, 109 Ohio St.3d 176, 2006–Ohio–1245, 846 N.E.2d 824, ¶ 16.

{¶ 37} A claim of ineffective assistance of trial counsel should be raised in a direct appeal. *State v. Dillard*, 7th Dist. No. 12 JE 29, 2014–Ohio–439, ¶ 21, 27; *State v. Delgado*, 7th Dist. No. 15 MA 26, 2015–Ohio–5006, ¶ 18. Thus, this argument is barred by the doctrine of res judicata.

{¶ 38} Accordingly, appellant's third assignment of error is without merit and is overruled.

*Everson III*, 2017 WL 986141, at *4; (Ex. 69, Doc. 10-1, at 569). Petitioner filed two applications for reconsideration. (Ex. 70, Doc. 10-1, at 573-81); (Ex. 71, Doc. 10-1, at 582-88). The Seventh District Court of Appeals denied both applications for reconsideration because they were untimely and lacked merit. (Doc. 73, Doc. 10-1, at 595-97); (Ex. 74, Doc. 10-1, at 598-99). In one of these denials the appellate court again cited *res judicata*:

In the May 9, 2016 judgment entry we also noted that when ineffective assistance of trial counsel can be resolved on appeal without resorting to evidence outside of the record, it must be raised on direct appeal and may be barred by res judicata if it is not raised. The arguments raised by appellant in his postconviction petition could have been raised on direct appeal.

(Doc. 73, Doc. 10-1, at 596). The Ohio Supreme Court declined to accept jurisdiction of Petitioner's subsequent appeal and remained as silent to the merits of the claim. *See* Ex. 77, Doc. 10-1, at 632.

Importantly here, as Respondent points out, Petitioner is foreclosed from habeas review of Ground Ten based on Ohio's doctrine of *res judicata*. As noted above, in Ohio, claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*. *State v. Perry,* 226 N.E.2d 104, 108 (Ohio 1967). The state court here relied on the procedural bar of *res judicata*. *Everson III*, 2017 WL 986141, at *4; (Ex. 69, Doc.

26

10-1, at 569). It is well established in the Sixth Circuit that *res judicata* is an adequate and independent state ground sufficient to foreclose habeas review. *Coleman*, 268 F.3d at 429.

Relatedly, Petitioner seems to rely on the ineffective assistance of appellate counsel claim at Ground Sixteen as cause to overcome the default at Ground Ten. (Doc. 16, at 68-81). For the reasons discussed below at Ground Sixteen, Petitioner is unable to rely on ineffective assistance of appellate counsel as cause to overcome a default here.

For these reasons, the undersigned recommends Ground Ten be denied.

Merits Review – Grounds Twelve through Sixteen

*Ground Twelve*

In Ground Twelve, Petitioner asserts he was denied a fair trial due to prosecutorial misconduct. (Doc. 1, at 17-18). Specifically, Petitioner alleges prosecutors withheld potentially exculpatory statements made by Carlos Valentin in violation of *Brady v Maryland*, 373 U.S. 83, 87 (1963), and that prosecutors encouraged Mr. Valentin to lie about what he saw (Doc. 16, at 86-87). Respondent asserts that this claim is procedurally defaulted. (Doc. 10, at 77-79). For the reasons stated below, the undersigned finds the claim is preserved for federal habeas review, but fails on the merits.

Petitioner did not raise a prosecutorial misconduct claim on direct appeal. *See* Ex. 28, Doc. 10-1, at 114-52. He first raised a prosecutorial misconduct claim[4] in his amended petition for post-conviction relief to the Seventh District Court of Appeals. (Ex. 47, Doc. 10-1, at 324-27). On first review, the prosecutorial misconduct claim was not considered because the court of appeals

---

4. Petitioner raised a prosecutorial misconduct claim under an ineffective assistance of counsel umbrella. He alleged, in essence, that his trial counsel was ineffective for failing to call a (potentially exculpatory) eye witness – Carlos Valentin. *See* Ex. 47, Doc. 10-1, at 324-27. However, as set forth above, the state court ultimately addressed the prosecutorial misconduct claim independent of ineffective assistance.

remanded the case on other grounds. *Everson II*, 2016 WL 3258314, at *7; (Ex. 61, Doc. 10-1, at 452). On remand, the trial court granted the State's motion to dismiss the post-conviction petition (Ex. 63, Doc. 10-1, at 493-96), and Petitioner appealed – again arguing prosecutorial misconduct (Ex. 66, Doc. 10-1, at 521-25). The appellate court upheld the trial court's decision, overruling Petitioner's prosecutorial misconduct claim on the merits. (Ex. 69, Doc. 10-1, at 569-71). Petitioner filed a timely notice of appeal to the Ohio Supreme Court, (Ex. 75, Doc. 10-1, at 600-01), but it ultimately declined to accept jurisdiction (Ex. 77, Doc. 10-1, at 632). Thus, because the state court denied this claim on the merits and Petitioner raised it through all levels of the state courts Ground Twelve is preserved for federal habeas review.

The Seventh District Court of Appeals addressed Petitioner's prosecutorial misconduct allegation on the merits:

> {¶ 40} In his final assignment of error, appellant argues the prosecutor failed to divulge exculpatory statements to his second trial counsel. Appellant claims the prosecutor failed to disclose a statement Valentin made to him that he did not see a black car on the day in question and that appellant was not the man who shot Roland. Appellant further claims that the prosecutor threated and intimidated Valentin.

> {¶ 41} Due process requires that the prosecution provide the defendant with any evidence that is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). A *Brady* violation occurs when evidence that was not disclosed "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *State v. Ketterer*, 126 Ohio St.3d 448, 935 N.E.2d 9, ¶ 23, quoting *Kyles v. Whitley*, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

> {¶ 42} This argument goes back to the credibility of Valentin's affidavit.

> {¶ 43} In his affidavit, Valentin averred that he saw Glenn and Roland standing in Roland's driveway. Valentin then went inside his own house. He heard gunshots. He then looked outside and saw Glenn standing over Roland pointing a gun at him. Valentin also averred that he told the prosecutor what he witnessed and that the prosecutor tried to convince him to say that he saw appellant or a black car at the time of the shooting. Finally, Valentin averred that he told the same information to appellant's defense attorney, but the attorney never contacted him to testify.

{¶ 44} But in his sworn proffer, Valentin testified that he witnessed a car proceeding slowly down East Avondale. Valentin testified that he then went into his house. Next, he testified that he heard two gunshots. He testified that he looked outside and saw the car driving away at a faster speed. Valentin did not immediately realize that anyone had been shot. Valentin testified that he had no other information regarding the shooting.

{¶ 45} As determined above, the trial court did not abuse its discretion in finding Valentin's affidavit was not credible due to its inconsistencies with his previous proffer. Moreover, even if Valentin's affidavit was found to be credible, then appellant's counsel would have already had the information directly from Valentin since Valentin stated that he told this information to appellant's counsel. And therefore, it could not be said that the alleged undisclosed evidence could reasonably place the whole case in such a different light so as to undermine confidence in the verdict. Therefore, there is no evidence that a *Brady* violation occurred in this case.

{¶ 46} Accordingly, appellant's fourth assignment of error is without merit and is overruled.

*Everson III*, 2017 WL 986141, at *5-6; (Ex. 69, Doc. 10-1, at 569-71).

Here, the appellate court concluded no *Brady* violation occurred, primarily because Carlos Valentin initially gave his account *to Petitioner's own attorney. Id.* (citing Ex. 47, Doc. 10-1, at 328) ("I talked to Reginald Everson's Attorney Paul Conn and told him that I would come to court to testify as to everything I witnessed on March 30, 2008 with regards to the shooting[.]")). A *Brady* violation would have occurred had prosecutors alone knew of Carlos Valentin's potentially exculpatory testimony and failed to disclose it to Petitioner's attorney. *Brady v. Maryland*, 373 U.S. 83, 83 (1963). That is not what happened here. Petitioner's attorney knew about Carlos Valentin, and what he would testify to, and (presumably) made a strategic decision not to call him. Likely so, because as the court of appeals emphasized above, Valentin had *severe* credibility issues. *Everson III*, 2017 WL 986141, at *5-6; (Ex. 69, Doc. 10-1, at 569-71). Because there were such strong inconsistencies between Carlos Valentin's proffer, and subsequent affidavit, the court

of appeals concluded there was not enough evidence to support a prosecutorial misconduct claim. This is not contrary to, or an unreasonable application of *Brady*.

Accordingly, the undersigned recommends Ground Twelve be denied.

*Grounds Thirteen through Fifteen*

In Grounds Thirteen through Fifteen, Petitioner alleges his appellate counsel was ineffective for: (1) "fail[ing] to ensure the filing of the record with the reviewing court"; (2) "failing to argue against a victim's dying declaration in a proper manner"; and (3) "fail[ing] to properly argue in favor of the admission of the autopsy findings". (Doc. 1, at 18-22). Petitioner raised these claims in his Rule 26(B) application to reopen. (Ex 78, Doc. 10-1, at 635-47). When the appellate court overruled his application, Petitioner timely appealed the same claims to the Ohio Supreme Court (Ex. 82, Doc. 10-1, at 663-76), though it ultimately declined to accept jurisdiction (Ex. 84, Doc. 10-1, at 681). Thus, the claims within Grounds Thirteen through Fifteen are preserved for federal habeas review and will be addressed on their merits.

To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. This test applies to the actions of both trial and appellate counsel. *Smith v. Robbins,* 528 U.S. 259, 285 (2000); *Parks v. Bobby,* 545 F. App'x 478, 481 (6th Cir. 2013). An appellate attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-52 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). "In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability

of the defendant's convictions." *McMeans v. Brigano,* 228 F.3d 674, 682 (6th Cir. 2000).

"Counsel's performance is strongly presumed to be effective." *McFarland v. Yukins,* 356 F.3d

688, 710 (6th Cir. 2004) (quoting *Scott v. Mitchell,* 209 F.3d 854, 880 (6th Cir. 2000)). To prevail

on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate

counsel "ignored issues [which] are clearly stronger than those presented." *Smith,* 528 U.S. at 288

(quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)). And, importantly, judicial review of

an ineffective assistance of counsel claim through the lens of § 2254(d)(1) is "doubly deferential".

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). In sum, Petitioner must demonstrate appellate

counsel's performance was deficient, and the deficient performance so prejudiced the appeal such

that the appellate proceedings were unfair and the result unreliable. *See Strickland,* 466 U.S. at

687.

In its denial of Petitioner's Rule 26(B) application, the Seventh District Court of Appeals

addressed these allegations, and rejected Petitioner's claims:

> Pursuant to App.R. 26(B)(1), a criminal defendant "may apply for reopening of the
> appeal from the judgment of conviction and sentence, based on a claim of
> ineffective assistance of appellate counsel." An applicant must demonstrate that
> "there is a genuine issue as to whether the applicant was deprived of the effective
> assistance of counsel on appeal." App.R. 26(B)(5). In order to show ineffective
> assistance of appellate counsel, the applicant must meet the two-prong test outlined
> in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),
> that is, the applicant must demonstrate deficient performance of counsel and
> resulting prejudice. *Id*. at 687.
>
> An application for reopening must contain: "One or more assignments of error or
> arguments in support of assignments of error that previously were not considered
> on the merits in the case by an appellate court or that were considered on an
> incomplete record because of appellate counsel's deficient representation." App.R.
> 26(B)(2)(c). *See also State v. Clark*, 7th Dist. No. 08 MA 15, 2015-Ohio-2584, ¶
> 19. Appellant does not present any assignments of error, but rather, simply lists
> headings and arguments. For this reason alone we may overrule his motion.
> Nevertheless, we will briefly review the general issues raised in Appellant's
> motion.

First, Appellant argues that his counsel failed to file several hearing transcripts concerning a motion to suppress. Simply stating that transcripts were not filed does not meet the *Strickland* standard for ineffective assistance of counsel. There are many strategic reasons why a transcript is not filed, particularly if the transcript does not support counsel's argument on appeal. Appellate courts refrain from second-guessing the strategic decisions of counsel. *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 152.

Second, Appellant contends that his counsel did not fully explore the reasons for possibly excluding the victim's statement that "Reg shot me." This issue was thoroughly argued and reviewed by both parties on appeal and there is no deficiency in counsel's performance regarding this matter.

Third, Appellant argues that counsel rightly raised the trial court's denial of a motion in limine regarding the autopsy report of the victim. Appellant believes his counsel could have done a better job arguing this issue. Counsel presented the arguments that were available to him, and the fact that he did not prevail on appeal does not make his performance deficient. The matter was thoroughly raised and reviewed on appeal.

Fourth, Appellant raises the possibility that trial counsel was ineffective and that issue should have been an assignment of error on appeal. Appellant relies on evidence outside the record to establish ineffective assistance of trial counsel, and for this reason, appellate counsel could not have raised this issue on direct appeal. *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982) (when ineffective assistance of trial counsel can be resolved on appeal without resorting to evidence *dehors* the record, it must be raised and may be barred by *res judicata* if not raised.) Seeing that it would have incorrect for appellate counsel to raise this issue, counsel's performance was proper and was not deficient.

There being no actual assignments of error presented, and since none of Appellant's arguments indicate deficient performance of counsel or resulting prejudice, Appellant's App.R. 26(B) motion is overruled as to both cases that may be referenced by Appellant's motion, Appeal Nos. 14 MA 0072 and 12 MA 0128.

(Ex. 80, Doc. 10-1, at 657-59).

*Ground Thirteen*

First, in Ground Thirteen, Petitioner alleges his appellate counsel was ineffective because he did not file several transcripts necessary for appellate review of the trial court's failure to issue a decision on a motion to suppress. (Doc. 1, at 18-19). Petitioner asserts he was prejudiced because

"the tapes were essential for the appellate court's review. . . and deprived Petitioner of a favorable

outcome[.]" (Doc. 16, at 91).

> The Seventh District Court of Appeals first addressed the transcript issue on direct appeal:

> {¶ 50} Appellant filed a motion to suppress the photo array identification of Appellant by Glenn. The trial court did not explicitly issue a decision on this motion. Appellant now argues that this failure to issue a decision violated Appellant's Fourteenth Amendment right to Due Process.

> {¶ 51} When a trial court declines to rule on a motion but renders final judgment on the matter, an appellate court presumes that the trial court overruled the motion *sub silencio*. *State v. Crooms,* 7th Dist. Nos. 11 CO 17, 12 CO 9, 2014-Ohio-2928, 2014 WL 2999184, ¶ 18; *State v. Lawson,* 9th Dist. No. 21227, 2003-Ohio-1299, 2003 WL 1240135. Therefore, we conclude that the trial court overruled Appellant's motion. Appellant's alleged due process error is the failure to actually rule on the motion, but there can be no error because of the presumption that the motion was overruled.

> {¶ 52} Even if we accepted Appellant's interpretation, there are further problems with his argument. Appellant failed to file several hearing transcripts related to the motion to suppress. These include hearings from July 1, 2009, August 6, 2009, June 18, 2010, and April 5, 2011. Without transcripts, we cannot review the questions implicit in Appellant's assignment of error. When a party fails to file a transcript necessary to review a matter on appeal, the reviewing court will overrule the assignment of error and affirm the trial court judgment. App.R. 9(B); *State v. Kimbrough,* 7th Dist. No. 08–MA–187, 2009-Ohio-6875, 2009 WL 5067037, ¶ 45.

> {¶ 53} Finally, for a photo array to be admissible it must not be unnecessarily or unreasonably suggestive. *State v. Brown,* 38 Ohio St.3d 305, 310, 528 N.E.2d 523 (1988), citing *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). If the photo array is not unreasonably suggestive, it does not violate due process. There is no evidence before us that any of the police practices were unreasonably suggestive as to render Glenn's identification unreliable under the totality of the circumstances. Glenn knew Appellant personally prior to the shooting and was able to identify Appellant both prior to and at trial. Appellant's sixth assignment of error is overruled.

*Everson I*, 57 N.E.3d at 308; (Ex. 31, Doc. 10-1, at 235-36). First, even without the transcripts, the

appellate court presumed the trial court ruled on the pending motion *sub silencio* because it

rendered a final judgment in the case. *Id*. The appellate court found no error in the trial court's

actions here. *Id*. Still, the appellate court addressed the merits of Petitioner's claim, citing the

standard for photo array admissibility, and concluded there was no evidence before them to support any "unreasonably suggestive" police practices such to render the identification unreliable, and thus, inadmissible. *Id*.

Further, as quoted above, in its denial of Petitioner's Rule 26(B) application, the Seventh District Court of Appeals again addressed the transcript allegation, and rejected Petitioner's claim that appellate counsel's failure to file a transcript fell below the *Strickland* standard, going so far as to note that there might be several strategic reasons why a transcript was not filed. (Ex. 80, Doc. 10-1, at 658). Importantly, as the court of appeals noted on direct appeal, Petitioner did not present any evidence to support the underlying merits of the photo array suppression issue. *See Everson* I, 57 N.E.3d at 308; Ex. 31, Doc. 10-1, at 236. Petitioner also did not argue the merits of the suppression claim in his Rule 26(B) application to reopen. *See* Ex. 78, Doc. 10-1, at 639-40. Similarly, in his Petition before this Court, he does not present any explanation demonstrating he would have prevailed on appeal, and again, does not address the merits of the underlying suppression issue. (Doc. 16, at 90-97). Thus, it appears Petitioner "attempts to bootstrap ineffectiveness for failure to comply with a procedural rule into prejudice." *McDermott v. Williams*, 2010 WL 5811950, at *14 (N.D. Ohio), *report and recommendation adopted*, 2011 WL 590225. And "[c]ontrary to *Strickland*, Petitioner's argument would apply, without regard to merit, to any case where counsel failed to file transcripts." *Id*. Accordingly, the undersigned finds Petitioner has not shown the appellate court's decision here was contrary to, or an unreasonable application of, *Strickland*, 466 U.S. at 687, and he is therefore not entitled to habeas relief. *See* 28 U.S.C. § 2254(d).

*Grounds Fourteen and Fifteen*

In Grounds Fourteen and Fifteen, Petitioner argues appellate counsel was ineffective for: (1) "failing to argue against a victim's dying declaration in a proper manner"; and (2) "fail[ing] to properly argue in favor of the admission of the autopsy findings." (Doc. 1, at 18-22).

Importantly here, the Seventh District Court of Appeals emphasized that Petitioner's counsel on direct appeal *thoroughly* argued the dying declaration issue. (Ex. 80, Doc. 10-1, at 657-59) (citing Ex. 28, Doc. 10-1, at 129-32) (Petitioner's counseled appellate brief)). Though the outcome was not what Petitioner hoped it would be, the appellate court found no deficiencies in appellate counsel's performance in this matter. (Ex. 80, Doc. 10-1, at 657). Similarly, the court recognized appellate counsel also argued the issue of the autopsy report's inclusion at trial, noting "[c]ounsel presented the arguments that were available to him, and the fact that he did not prevail on appeal does not make his performance deficient. The matter was thoroughly raised and reviewed on appeal." *Id*.; *see also* Ex. 28, Doc. 10-1, at 140-41 (Petitioner's counseled appellate brief).

Here, though Petitioner is understandably disappointed in the outcome, his claim of ineffective assistance of appellate counsel must fail under the doubly deferential standard of review. *Knowles*, 556 U.S. at 123. As discussed, the appellate court reasonably concluded Petitioner's counsel thoroughly raised and litigated these issues and Petitioner has not shown how the court's decision was contrary to, or an unreasonable application of *Strickland*, 466 U.S. at 687. *See* 28 U.S.C. § 2254(d). Thus, Petitioner is not entitled to habeas relief on Grounds Fourteen and Fifteen.

*Ground Sixteen*

In Ground Sixteen, Petitioner asserts his appellate counsel was ineffective for "failing to raise the issue of ineffective assistance of trial counsel when counsel failed to call witnesses whose testimony could exculpate Petitioner and refute the false testimony of a police officer". (Doc. 1, at 22).  As he did with Grounds Thirteen through Fifteen, Petitioner raised this claim in his Rule 26(B) application to reopen. (Ex 78, Doc. 10-1, at 635-47). When the appellate court overruled his application, Petitioner timely appealed this claim to the Ohio Supreme Court (Ex. 82, Doc. 10-1, at 663-76), though it ultimately declined to accept jurisdiction (Ex. 84, Doc. 10-1, at 681). Thus, the claim within Grounds Sixteen is preserved for federal habeas review.

In denying Petitioner's Rule 26(B) application to reopen, the Seventh District Court of Appeals found:

> Fourth, Appellant raises the possibility that trial counsel was ineffective and that issue should have been an assignment of error on appeal. Appellant relies on evidence outside the record to establish ineffective assistance of trial counsel, and for this reason, appellate counsel could not have raised this issue on direct appeal. *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982) (when ineffective assistance of trial counsel can be resolved on appeal without resorting to evidence *dehors* the record, it must be raised and may be barred by *res judicata* if not raised.) Seeing that it would have incorrect for appellate counsel to raise this issue, counsel's performance was proper and was not deficient.

(Ex. 80, Doc. 10-1, at 659). As the appellate court noted, Petitioner relied on evidence outside of the trial record when he raised his ineffective assistance of appellate counsel claim. *Id*. Because he did so, Petitioner could not have properly raised these issues on direct appeal. *Id*. Thus, as the appellate court emphasized, Petitioner's appellate counsel could not have been deficient for failing to raise the issue. *Id*. Consequently, Petitioner has failed to demonstrate the appellate court's finding that appellate counsel was not ineffective was contrary to, or an unreasonable application of, federal law. 28 U.S.C. § 2254(d).

In conclusion, the undersigned recommends Grounds Thirteen through Sixteen of the Petition be denied as meritless

Evidentiary Hearing Request

In his Traverse, Petitioner requests, very generally, that the Court conduct an evidentiary hearing. (Doc. 16, at 9). Where a petitioner "never specifie[s] what could be discovered through an evidentiary hearing" or where his claims are "either barred from review or without merit," a district court need not hold an evidentiary hearing. *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). Nor is "an evidentiary hearing . . . required on issues that can be resolved by reference to the state court record." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)). Because, as discussed above, Petitioner's grounds for relief are procedurally defaulted or meritless, the undersigned recommends his request for an evidentiary hearing be denied.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends the Petition be denied as Grounds One through Ten are procedurally defaulted; Ground Eleven is non-cognizable; and Grounds Twelve through Sixteen fail on the merits.

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).